# 1

*498 Mich. 907; 870 N.W.2d 700;*
*2015 Mich. LEXIS 2534, ** *

PEOPLE OF THE STATE OF MICHIGAN, Plaintiff-Appellee, v HOWARD JAMES MCKNIGHT, Defendant-Appellant.

SC: 151759

SUPREME COURT OF MICHIGAN

498 Mich. 907; 870 N.W.2d 700; 2015 Mich. LEXIS 2534

October 28, 2015, Decided

**PRIOR HISTORY:** **[*1]** COA: 319979. Wayne CC: 13-000628-FC.
People v. McKnight, 2015 Mich. App. LEXIS 803 (Mich. Ct. App., Apr. 21, 2015)

**JUDGES:** Robert P. Young, Jr., Chief Justice. Stephen J. Markman, Brian K. Zahra, Bridget M. McCormack, David F. Viviano, Richard H. Bernstein, Joan L. Larsen, Justices.

 **OPINION**

**Order**

On order of the Court, the application for leave to appeal the April 21, 2015 judgment of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the questions presented should be reviewed by this Court.



**LexisNexis** About LexisNexis | Privacy Policy | Terms & Conditions | Contact Us **RELX Group**™
Copyright © 2016 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

# STATE OF MICHIGAN
## IN THE SUPREME COURT

**PEOPLE OF THE STATE OF MICHIGAN,**
      Plaintiff-Appellee,

                                    Michigan Supreme Court No._____

-v-

                                      Court of Appeals No. 319979

**HOWARD JAMES MCKNIGHT,**
      Defendant-Appellant.             Trial Court No. 13-000628-FC

_____/

Wayne County Prosecutor
12th Floor Appellant Division
1441 Antoine Street
Detroit, Michigan 48226

HOWARD JAMES MCKNIGHT # 687302
Defendant in Pro Per
St. Louis Correctional Facility
8585 N. Croswell Rd
St. Louis, MI 48880

_____/

## PRO PER APPLICATION FOR LEAVE TO APPEAL

# TABLE OF CONTENTS

Table of Content ............................................................................i

Index of Authority ..........................................................................ii

Statement of Jurisdiction ..............................................................iv

Questions Presented........................................................................v

Statement of Facts...........................................................................1

Argument I

THE TESTIMONY OF OFFICER TINSLEY'S INVADED THE PROVINCE OF THE JURY WHERE THE OFFICER USED THE COMPUTER PROGRAM TO CREATE A SKETCH FROM A VICTIM'S MEMORY AND HE TESTIFIED THAT IT REFLECTS THE DEFENDANT'S PHOTOGRAPH.

Argument II

THE DEFENSE CROSS EXAMINATION OF THE OFFICER IN CHARGE, TESTIMONY WAS ELICITED TO SHOW THAT THE INVESTIGATION FOCUSED ON DEFENDANT RATHER THAN PURSUING OTHER SUSPECTS DENIED DEFENDANT A FAIR TRIAL. AND ON REDIRECT EXAMINATION, THE PROSECUTOR ASKED THE OFFICER IN CHARGE TO EXPLAIN WHY HE FOCUSED ON THE DEFENDANT RATHER THAN PURSUE OTHER SUSPECTS, THIS TESTIMONY INVADED THE PROVINCE OF THE JURY.

Argument III

TRIAL COUNSEL WAS INEFFECTIVE WHERE HE FAILED TO OBJECT TO THE OFFICER MENTIONING OF A "MUG SHOT" OF A "SPECIFIC INDIVIDUAL" BEFORE ARRESTING THE DEFENDANT. THE REFERENCE TO A MUG SHOT DENIED DEFENDANT A FAIR TRIAL.

Relief Sought.....................................................................................15

## TABLE OF AUTHORITIES

Cases

*Cooper v Sowders*, 837 F2d 284 (CA 6, 1988) ..................................................................5,13

*Daubert v Merrell Dow Pharmaceuticals, Inc.*, 509 US 579; 113 SCt 2786; 125 LEd2d 469
    (1993) .............................................................................................................................7

*Freed v Salas*, 286 Mich App 300, 347; 780 NW2d 844, 872 (2009) ...................................4

*Frye v United States*, 293 F 1013 (1923) ............................................................................8

*Gravley v Mills*, 87 F3d 779, 785-86 (6th Cir. 1996)...........................................................11

*Kumho Tire Company, Ltd. v Carmichael*, 526 US 137; 119 SCt 1167; 143 LEd2d 238 (1999)....7

*Linda M. Gilbert v Daimlerchrysler Corporation*, 470 Mich 749; 685 NW2d 391 (2004)...........9

*Lovett v Foltz*, No. 88-1682, 1989 WL 101522, at 4 (CA 6,  Sept. 5, 1989) ...............................11

*Martin v Rose*, 744 F2d 1245, 1249 (CA 6, 1984).................................................................11

*Northrop v Trippett*, 265 F3d 372 (CA 6, 2001), cert den 535 US 955; 122 S Ct 1358; 152 L Ed 2d
    354 (2002).......................................................................................................................13

*People v Barclay*, 208 Mich App 670, 672; 528 NW2d 842 (1995)....................................5,13

*People v Beckley*, 434 Mich 691; 456 NW2d 391 (1990) ...................................................6, 14

*People v Bragdon*, 142 Mich App 197, 199; 369 NW2d 208, 209 (1985) .........................3,5,13

*People v Carbin*, 463 Mich 590; 623 NW2d 884 (2001)........................................................10

*People v Carines*, 460 Mich 750 (1999) ............................................................................10

*People v Clark*, 340 Mich 411; 65 NW2d 716 (1954)..............................................................5

*People v Cowell*, 44 Mich App 623, 628; 205 N.W.2d 600 (1973) ..........................................9

*People v Dewald*, 267 Mich App 365, 377; 705 NW 2d 167 (2005)........................................7

*People v Drossart*, 99 Mich App 66; 297 NW2d 863 (1980) .............................................6,9, 14

*People v Fomby*, 300 Mich App 46; 831 NW2d 887 (2013).....................................................2

*People v Ginther*, 390 Mich 436 (1973)............................................................................14

*People v Hoag*, 460 Mich1; 594 NW2d 57 (1999) ...............................................................10

*People v Horton*, (1997 Mich. App LEXIS 3107)...............................................................14

*People v Humphreys*, 24 Mich App 411, 418-420; 180 NW2d 328 (1970)..............................5

*People v Lukity*, 460 Mich 484, 488; 596 NW2d 607, 609 (1999)..........................................2

*People v Lyons*, 93 Mich App 35, 47; 285 NW2d 788 (1979)..................................................9

*People v Matulonis*, 115 Mich App 263, 268; 320 NW2d 238 (1982) ...................................10

*People v Montgomery*, 22 Mich App 87; 176 NW2d 697 (1970)............................................5

*People v Parks*, 57 Mich App 738; 226 NW2d 710 (1975).................................................6, 14

*People v Patricia Williams*, 153 Mich App 582, 590; 396 NW2d 805 (1986)..........................6

*People v Peterson*, 450 Mich 349, 352 (1995)......................................................................6

*People v Peterson*, 450 Mich 349, 352; 537 NW 2d 837 (1995)..........................................5,14

*People v Pickens*, 446 Mich 298; 521 NW2d 797 (1994) .................................................10, 13

*People v Smith*, 158 Mich App 220, 230-31; 405 NW2d 156 (1987)....................................5,6

*People v Unger*, 278 Mich App 210, 216; NW2d 272, 283 (2008)..........................................2

*Powell v Alabama*, 287 US 45, 57 (1932).........................................................................10

*Rachel v Bordenkircher*, 590 F2d 200, 204 (CA 6, 1978) ...................................................11

*State v Steadman*, 855 P2d 919 (Kan, 1993) ....................................................................14

*Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984)....................10,13

*United States v Begay*, 42 F3d 486, 503 (CA 9, 1994) ..........................................................3

*United States v LaPierre*, 998 F2d 1460, 1463 (CA9, 1993)..................................................3

*United States v Rodriguez-Adorno*, 695 F3d 32, 40 (CA 1, 2012) ..........................................3

*Ward v United States*, 995 F.2d 1317 (CA 6, 1993) .............................................................11

**Statutes**

MCL 600.212 ...................................................................................................................iv
MCL 600.215 ...................................................................................................................iv

**Rules**

FRE 701 ............................................................................................................................3
FRE 702 .........................................................................................................................7, 9
FRE 703 .........................................................................................................................8, 9
MCR 7.302.......................................................................................................................iv
MRE 701 ......................................................................................................................2, 3
MRE 702.......................................................................................................................8, 9
MRE 703..........................................................................................................................8
MRE 704..................................................................................................................5, 7, 13

**Mich Const Ams**

Const 1963, art 1, § 17, 20 ............................................................................................13

**US Const Ams**

US Const, Am XIV ......................................................................................................5, 12
US Const, Ams VI; XIV ..................................................................................................13

## STATEMENT OF JURISDICTION

Defendant-Appellant Howard James McKnight, was found guilty on 11/22/13, of two counts of kidnapping, two counts of armed robbery, first degree criminal sexual conduct (sexual penetration occurring during any other felony), two counts of felonious assault, felon in possession of a firearm, and possession of a firearm during the commission of a felony (felony firearm). The proceeding was a jury trial. Defendant-Appellant was sentenced by the Honorable Ewell Edward, Jr. of Wayne County, the Sentencing date was 12/12/13, to a term of 32 to 60` years.

Defendant-Appellant is currently in prison at the St. Louis Correctional Facility, 8585 N. Croswell Rd, St. Louis Michigan 48880. The Michigan Court of Appeals affirmed Defendant-Appellant's conviction and sentence and/or denied Defendant-Appellant leave to appeal on dated April 21, 2015. A copy of the decision is attached. This application is filed within 56 days of the Court of Appeals decision.

Defendant-Appellant now brings this Application for Leave to appeal, and this court is vested with jurisdiction, pursuant to MCR 7.302; MCL 600.212; MCL 600.215.

iv

# QUESTIONS PRESENTED

Question I

DID THE TESTIMONY OF OFFICER TINSLEY'S INVADED THE PROVINCE OF THE JURY WHERE THE OFFICER USED THE COMPUTER PROGRAM TO CREATE A SKETCH FROM A VICTIM'S MEMORY AND HE TESTIFIED THAT IT REFLECTS THE DEFENDANT'S PHOTOGRAPH?

Defendant-Appellant answers: Yes
Plaintiff-Appellee would answer: No
Trial court answer: No

Question II

WAS THE DEFENSE CROSS EXAMINATION OF THE OFFICER IN CHARGE, TESTIMONY ELICITED TO SHOW THAT THE INVESTIGATION FOCUSED ON DEFENDANT RATHER THAN PURSUING OTHER SUSPECTS DENY DEFENDANT A FAIR TRIAL? AND ON REDIRECT EXAMINATION, THE PROSECUTOR ASKED THE OFFICER IN CHARGE TO EXPLAIN WHY HE FOCUSED ON THE DEFENDANT RATHER THAN PURSUE OTHER SUSPECTS, DID THIS TESTIMONY INVADED THE PROVINCE OF THE JURY?

Defendant-Appellant answers: Yes
Plaintiff-Appellee would answer: No
Trial court answer: No

Question III

WAS TRIAL COUNSEL INEFFECTIVE WHERE HE FAILED TO OBJECT TO THE OFFICER MENTIONING OF A "MUG SHOT" OF A "SPECIFIC INDIVIDUAL" BEFORE ARRESTING THE DEFENDANT? AND DID THE REFERENCE TO A MUG SHOT DENY DEFENDANT A FAIR TRIAL?

Defendant-Appellant answers: Yes
Plaintiff-Appellee would answer: No
Trial court answer: No

## STATEMENT OF FACTS

Defendant relies on statement of facts in his initial brief to the court of appeal.

On April 21, 2015 the Michigan Court of Appeal, in an unpublished opinion affirmed Defendant-Appellant Howard James McKnight conviction and sentence. Defendant-Appellant now brings this Application for Leave to Appeal.

Respectfully submitted,

*Howard McKnight*

Howard James McKnight

### Verification of Facts

I, Howard James McKnight, declare under penalty of perjury that the above stated facts are the truth to the best of my knowledge, information, and belief. As to those facts stated, I believe them to be true.

*Howard McKnight*

Howard James McKnight

Dated _6-8_, 2015

1

<u>ARGUMENT I</u>

**THE TESTIMONY OF OFFICER TINSLEY'S INVADED THE PROVINCE OF THE JURY WHERE THE OFFICER USED THE COMPUTER PROGRAM TO CREATE A SKETCH FROM A VICTIM'S MEMORY AND HE TESTIFIED THAT IT REFLECTS THE DEFENDANT'S PHOTOGRAPH.**

<u>Standard of Review</u>

Generally, the trial court's evidentiary rulings are reviewed for abuse of discretion. *People v Unger*, 278 involving the admission of evidence frequently involve preliminary questions of law, such as whether a rule of evidence or statute precludes the admissibility of the evidence, and such a decision is a question of law that is reviewed de novo. *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607, 609 (1999).

<u>Discussion</u>

"If the witness does not testify as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences that are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based in scientific, technical, or other specialized knowledge within the scope of rule 701." MRE 701.

In *People v Fomby*, 300 Mich App 46; 831 NW2d 887 (2013), the Court of Appeals ruled that a police officer who identified individuals depicted in still frame photos taken from surveillance video was a lay rather than an expert witness. The officer viewed "the six hours of video. . . . and still photos several times to reach his conclusions and opinions," and testified that the "individuals depicted in the still frames . . . [were] the same individuals in the actual video." *Id.* Importantly for the court, the officer did not identify the defendant. *Id.*

Tracking the language of MRE 701, the Court of Appeals in *Fomby* found the officer to be a lay witness, first, because "his testimony was based upon his own perceptions of the video itself." *Id.* Second, the court determined that the officer's testimony "helped the jury to correctly and efficiently determine" the identity of the individuals depicted in the footage. *Id.* In making

2

this determination, the court analogized to a federal case that found "one viewing of the videotape of a demonstration involving over 200 people" insufficient "for a jury to adequately discern the events depicted," and reasoned that the jury would similarly have difficulty identifying the depicted individuals given the length of the surveillance footage. *Id.*, quoting *United States v Begay*, 42 F3d 486, 503 (CA 9, 1994).

Having concluded that the officer was a lay witness under MRE 701, the Court of Appeals in *Fomby* turned to the issue of whether his testimony had impermissibly invaded the province of the jury. *Id.* The court emphasized that "a witness cannot express an opinion on the defendant's guilt or innocence," *id.*, quoting *People v Bragdon,* 142 Mich App 197, 199; 369 NW2d 208, 209 (1985), and cited federal case law for the proposition that "the issue of whether the defendant in the courtroom is the person pictured in a surveillance photo 'was a determination properly left to the jury.' " *Id.*, quoting *United States v LaPierre*, 998 F2d 1460, 1463 (CA9, 1993). Indeed, "where a witness is in no better position than the jury to make an identification from a video or photograph, the testimony is inadmissible under FRE 701." *Id.*, citing *United States v Rodriguez-Adorno*, 695 F3d 32, 40 (CA 1, 2012). Because the officer in *Fomby* (1) did not identify the defendant and (2) had created the still images himself and was therefore "in the best position to identify the individuals in the photographs as being the same as those depicted in the video," the Court of Appeals found his testimony admissible. *Id.*

In the case at bar, Officer Tinsley, testified to whether the sketch was the defendant, regarding his work with the sketch. (Trial Tr. 11/19/ pg. 103).

Officer Tinsley, however, was in no better position than the jury to make an identification from his sketch, whether it was the Defendant or another individual, and in any case could not permissibly express an opinion as to Mr. McKnight guilt or innocence. Unlike the videos at issue in *Begay* and *Fomby*, the sketch prepared by officer Tinsley.

By purporting to identify Mr. McKnight in the computer sketch photograph, Officer

3

Tinsley impermissibly usurped the essential role of the jury. Because the question of Mr. McKnight's guilt or innocence was one exclusively for the jury to decide, and because, as a police officer, Officer Tinsley's testimony would have been particularly persuasive, the trial court should not have allowed Officer Brown to share his opinion concerning Mr. McKnight's guilt or innocence. By permitting Officer Tinsley to opine definitively that the computer sketch photograph depicted Mr. McKnight, the trial court effectively removed from the jury the decision on the ultimate issue of his guilt or innocence. *See Freed v Salas*, 286 Mich App 300, 347; 780 NW2d 844, 872 (2009).

Officer Tinsley was in no better a position than the jury to decide whether the man sitting before them was the same man depicted in the computer sketch photograph. Because his opinion testimony impermissibly invaded the province of the jury and effectively foreclosed its ability to determine Mr. McKnight's guilt or innocence, the verdict should be vacated.

## ARGUMENT II

**THE DEFENSE CROSS EXAMINATION OF THE OFFICER IN CHARGE, TESTIMONY WAS ELICITED TO SHOW THAT THE INVESTIGATION FOCUSED ON DEFENDANT RATHER THAN PURSUING OTHER SUSPECTS DENIED DEFENDANT A FAIR TRIAL. AND ON REDIRECT EXAMINATION, THE PROSECUTOR ASKED THE OFFICER IN CHARGE TO EXPLAIN WHY HE FOCUSED ON THE DEFENDANT RATHER THAN PURSUE OTHER SUSPECTS, THIS TESTIMONY INVADED THE PROVINCE OF THE JURY.**

## STANDARD OF REVIEW

The "de novo" standard of review applies to the existing record. See, e.g., People v Barclay, 208 Mich App 670, 672 (1995).

## DISCUSSION

MRE 704 provides that "Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." However, in criminal cases, the Due Process Clause of US Const, Am XIV prohibits introduction of opinion testimony as to a defendant's guilt. *Cooper v Sowders*, 837 F2d 284 (CA6, 1988). Determining witness credibility and the guilt or innocence of the accused are functions that lie solely within the province of the jury, and nothing should interfere with its ability to perform those functions. *People v Clark*, 340 Mich 411; 65 NW2d 716 (1954); *People v Montgomery*, 22 Mich App 87; 176 NW2d 697 (1970). It is thus improper for a prosecution witness to express an opinion on the defendant's guilt. *People v Smith*, 158 Mich App 220, 230-31; 405 NW2d 156 (1987); *People v Peterson*, 450 Mich 349, 352; 537 NW 2d 837 (1995); *People v Humphreys*, 24 Mich App 411, 418-420; 180 NW2d 328 (1970).

In *Cooper v Sowders*, supra, the Sixth Circuit granted federal habeas relief in a murder case where a detective testified, over objection that in the detective's opinion the evidence found linked only the defendant to the crime. Similarly, in *People v Bragdon*, 142 Mich App 197 (1985), the Court of Appeals remanded for a new trial where the prosecutor had asked the defendant "so you're guilty of the crime?":

Absent a valid plea, the issue of an accused's guilt or innocence is a question for the trier

5

of fact. **As with matters of credibility, it is clear that a witness cannot express an opinion on the defendant's guilt or innocence of the charged offense.** See, *People v Drossart*, 99 Mich App 66; 297 NW2d 863 (1980); *People v Parks*, 57 Mich App 738; 226 NW2d 710 (1975) [*People v Bragdon*, supra, p 199].

See also, *People v Peterson*, 450 Mich 349, 352 (1995) (re-affirming the holding in *People v Beckley*, 434 Mich 691; 456 NW2d 391 (1990), that an expert in a child sexual abuse case may not testify that the defendant is guilty); *People v Horton*, unpublished opinion (# 193854, 8-5-97) (granting a new trial in a breaking and entering case where the police chief testified that, in his opinion, the defendant and an accomplice were the ones that committed the offense).

In the instant case, the police-officer-in-charge focused his investigation on the defendant and ignored other leads. (T 11/20 pg. 111-18, 121). The prosecutor asked the officer-in-charge to explain why he focused the investigation on defendant. (T 11/20, pg. 120, 132). Clearly, Officer Kane was usurping the role of the jury to determine the facts of the case. The jury was entitled, indeed required, to make its own findings with regard to the composite sketch.

It is improper for a witness to comment or provide an opinion on the credibility of another witness, since matters of credibility are to be determined by the trier of fact. *People v Patricia Williams*, 153 Mich App 582, 590; 396 NW2d 805 (1986). In *People v Smith*, 158 Mich App 220; 405 NW2d 156 (1987), the Court held that the admission of testimony by police officers that a key prosecution witness who testified against defendant in the murder trial had testified truthfully, that his story checked out, and that he did not pull the trigger, constituted reversible error. Likewise, Officer Kane denied Mr. McKnight a fair trial by testifying that the warrant for defendant's arrest was based on the composite sketch, the lineup identification by one of the victims.

It may be argued that the opinion testimony was acceptable because "[t]estimony in the

6

form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." *People v Dewald*, 267 Mich App 365, 377; 705 NW 2d 167 (2005); MRE 704. However, Officer Kane was neither introduced nor qualified as an expert witness in composite sketching, so MRE 704 does not apply. Under the current rules of evidence, based on United States Supreme Court precedent, the testimony was clearly inadmissible. In 1993, the Supreme Court issued its decision in *Daubert v Merrell Dow Pharmaceuticals, Inc.*, 509 US 579; 113 SCt 2786; 125 LEd2d 469 (1993), which specifically directed courts to interpret Federal Rule of Evidence 702 as requiring the trial court to perform an evidentiary "gate-keeping" function, to ensure that any expert's testimony is both reliable and relevant. It also stated that Rule 702 is not limited to novel or unconventional techniques; evidence which had previously been admitted was also open to challenge. Id at 592 n. 11.

Under *Daubert*, a court must determine, first, whether the particular discipline constitutes "scientific knowledge," and second, whether it will assist the trier of fact. To determine whether a particular discipline is scientifically valid, the *Daubert* court set forth a non-exhaustive list of factors, including whether the methodology is capable of empirical testing, whether it has been subjected to peer review or publication, whether there exists a known or potential rate of error, whether standards and controls exist and are maintained, and whether it enjoys a degree of acceptance within the relevant scientific community. Id at 592-594.

In 1999, the Supreme Court decided *Kumho Tire Company, Ltd. v Carmichael*, 526 US 137; 119 SCt 1167; 143 LEd2d 238 (1999), in which it held that *Daubert's* "gatekeeping" obligation applies equally to *all* expert testimony, scientific or otherwise, and that when assessing the reliability of any proffered expert testimony, courts must either consider the factors enumerated in *Daubert*, or must use some other suitable criteria for assessing reliability. Id at 152. Following the *Kumho Tire* decision, FRE 702 was amended in 2000 to explicitly require that: 1) expert testimony must be based upon sufficient facts or data; 2) it must be the product of

7

reliable principles and methods; and 3) the expert witness must have applied the principles and methods reliably to the facts of the case.  MRE 702 was likewise amended.

Revised MRE 702 reads as follows:

"If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."

Revised MRE 703 states:

"The facts or data in the particular case upon which an expert bases an opinion or inference shall be in evidence. This rule does not restrict the discretion of the court to receive expert opinion testimony subject to the condition that the factual bases of the opinion be admitted in evidence thereafter." FRE 703 allows facts or data that "need not be admissible in evidence" to underlie an expert's opinion as long as the facts/data are "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject."

The change is designed to demand gate-keeping activity by trial courts in order to exclude unreliable expert testimony in line with the United States Supreme Court's pronouncements in *Daubert* and *Kumho Tire*. In *Daubert*, the Court agreed that the *Frye* [*Frye v United States*, 293 F 1013 (1923)] "general acceptance" test for admission of expert scientific testimony had been superseded by the Federal Rules of Evidence. Noting that experts are allowed to stray from the "usual requirement of firsthand knowledge," the Court demanded that an expert have "a reliable basis in the knowledge and experience of his discipline" for testimony presented to a fact finder. While not purporting to set out a clearly defined checklist, and while agreeing that "general acceptance" can still play a role, the Court suggested that the extent of

testing, peer review publication, and the known or potential error rate and the standards controlling the operation of the technique or scientific theory at issue are important.

In *Kumho Tire* the Court upheld the federal district court's rejection of a tire expert's testimony after the district court had found unreliable "the methodology employed by the expert in analyzing the data obtained in the visual inspection, and the scientific basis, if any, for such an analysis." Officer Kane's conclusions are unacceptable under the "general acceptance" theory as well as under *Daubert* and *Kumho Tire*, and certainly fail the test for admissibility set out in revised MRE 702 and FRE 703. As the Michigan Supreme Court recently held in *Linda M. Gilbert v Daimlerchrysler Corporation*, 470 Mich 749; 685 NW2d 391 (2004), MRE 702 requires the trial court to ensure that each aspect of an expert witness's proffered testimony, including the data underlying the expert's theories and the methodology by which the expert draws conclusion from that data, is reliable. The Advisory Committee Notes to Rule 702 specifically caution that a trial court is required under *Daubert* to do more than "tak[e] the expert's word for it." See FRE 702, Advisory Committee Notes to 2000 Amendments.

Furthermore, this was not just any witness opining as to an ultimate issue. The officer was a trained and respected police detective stating an opinion that the government had met its burden of proof. "The prosecutor may not attempt to place the prestige of his office, or that of the police, behind a contention that the defendant is guilty." *People v Cowell*, 44 Mich App 623, 628; 205 N.W.2d 600 (1973). Moreover, the legal conclusions offered by this key witness supplanted the duty of the judge during trial. "Allowing witnesses to testify as to questions of law invites jury confusion and the possibility that the jury will accept as law the witness's conclusion rather than the judge's trial instruction." *People v Lyons*, 93 Mich App 35, 47; 285 NW2d 788 (1979) (finding that securities expert statement on securities law reversible error in criminal prosecution). See also *People v Drossart*, 99 Mich App 66, 76; 297 NW2d 863 (1980) (holding that medical expert may not testify on law of insanity); *People v Matulonis*, 115 Mich

9

App 263, 268; 320 NW2d 238 (1982) (holding that a witness' opinion of the law "is both incompetent and irrelevant"). The opinion here from a respected and experienced detective likely "led the jury to suspend its own powers of judgment in reviewing the evidence before it." *Humphreys*, supra, at 420.

The error was plain and requires reversal. The following requirements were met: "(1) the error must have occurred; (2) the error was plain, that is, clear or obvious; (3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750 (1999). Because the videotapes were indecipherable and could have supported either version of the events, the issue of whether Mr. Lee shot the complainant was hotly contested. Officer Kane's testimony, regarding the composite sketch showed that Mr. McKnight's claims were true, undoubtedly swayed the jury in making their decision. In the alternative, trial counsel was ineffective in failing to object to the officer's testimony.

An essential ingredient of the Sixth Amendment right to counsel is that counsel provide constitutionally effective assistance. *Powell v Alabama*, 287 US 45, 57 (1932). In *Strickland v Washington*, 466 US 668; 104 SCt 2052, 80 LEd2d 674 (1984), the Supreme Court established that the benchmark of effectiveness "must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." 466 U.S. at 686. The *Strickland* test has been adopted in Michigan, *People v Pickens*, 446 Mich 298; 521 NW2d 797 (1994); *People v Hoag*, 460 Mich1; 594 NW2d 57 (1999); *People v Carbin*, 463 Mich 590; 623 NW2d 884 (2001). The *Strickland* Court set out a two-part inquiry to determine whether a counsel's assistance is constitutional ineffective. First, a defendant must show that counsel's performance was "deficient," involving "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687. This requires that counsel's conduct "fell below an objective standard of reasonableness," *Tucker*, 181 F3d at 754, and that counsel's "identified acts and omissions were

10

outside the wide range of professionally competent assistance." *Strickland*, 466 US at 690. The reviewing court must assess whether counsel's strategy itself was constitutionally deficient. *Martin v Rose*, 744 F2d 1245, 1249 (CA 6, 1984) (stating that "even deliberate trial tactics may constitute ineffective assistance of counsel if they fall outside the wide range of professionally competent assistance") (internal quotations and citation omitted); see also *Lovett v Foltz*, No. 88-1682, 1989 WL 101522, at 4 (CA 6, Sept. 5, 1989) (unpublished opinion) (stating that "the label 'strategy' is not a blanket justification for conduct which otherwise amounts to ineffective assistance of counsel"). The Sixth Circuit Court of Appeals has on several occasions found that a counsel's failure to object to prosecutorial misconduct constitutes defective performance when that failure is due to clear inexperience or lack of knowledge of controlling law, rather than **reasonable** trial strategy. See, e.g., *Gravley v Mills*, 87 F3d 779, 785-86 (6th Cir. 1996); *Rachel v Bordenkircher*, 590 F2d 200, 204 (CA 6, 1978).

If counsel's performance is deemed deficient, a defendant must show that those deficiencies were prejudicial to the defense. See *Strickland*, 466 US at 692. To make this showing, the defendant must demonstrate that there "is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; *Ward v United States*, 995 F.2d 1317 (CA 6, 1993)). In *Washington v Hofbauer*, supra, the Sixth Circuit held that the defense counsel's failure to object to the clear prosecutorial misconduct violated *Strickland*. The Court found that the prosecutor's tactics amounted to unfairly prejudicial misconduct plainly meriting an objection and curative instruction.

Trial counsel's failure to object in the instant case clearly prejudiced Defendant McKnight. The evidence of guilt was not overwhelming. The defining issue in the case was whether Mr. McKnight was the perpetrator of the charged offences. It was impossible to tell from the computer composite sketch, that Mr. McKnight was the perpetrator. Officer Kane

11

informed the jury, in his position of authority and prestige, that Mr. McKnight did, in fact, commit the charged offenses, and that the story the victims told was true. Had counsel objected before the damaging testimony was allowed, the outcome would likely have been different. Defendant is entitled to a new trial.

## ARGUMENT III

**TRIAL COUNSEL WAS INEFFECTIVE WHERE HE FAILED TO OB-JECT TO THE OFFICER MENTIONING OF A "MUG SHOT" OF A "SPECIFIC INDIVIDUAL" BEFORE ARRESTING THE DEFENDANT. THE REFERENCE TO A MUG SHOT DENIED DEFENDANT A FAIR TRIAL.**

### STANDARD OF REVIEW

For ineffective assistance of counsel claims, the "de novo" standard of review applies to the existing record. *People v Barclay*, 208 Mich App 670, 672; 528 NW2d 842 (1995).

### DISCUSSION

Defense trial counsel's failure to object to inadmissible evidence can be constitutionally ineffective assistance warranting a new trial where the deficient performance deprived the defendant of a fair trial. See generally, *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Pickens*, 446 Mich 298; 521 NW2d 797 (1994); *Northrop v Trippett*, 265 F3d 372 (CA 6, 2001), cert den 535 US 955; 122 S Ct 1358; 152 L Ed 2d 354 (2002).

Turning to the underlying issue, MRE 704 provides:

Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.

However, in criminal cases, the Due Process Clause of US Const, Am XIV prohibits introduction of opinion testimony as to a defendant's guilt.

For example, in *Cooper v Sowders,* 837 F2d 284 (CA 6, 1988), the Sixth Circuit granted Federal habeas relief in a murder case where a detective testified, over objection, that in the detective's opinion the evidence found linked only the defendant to the crime.

Similarly, in *People v Bragdon,* 142 Mich App 197; 369 NW2d 208 (1985), the Court of Appeals remanded for a new trial where the prosecutor had asked the defendant "so you're guilty of the crime?":

Absent a valid plea, the issue of an accused's guilt or innocence is a question for the trier of fact. As with matters of credibility, it is clear that a witness cannot express an opinion on the defendant's guilt or innocence of the charged offense.

13

See, *People v Drossart,* 99 Mich App 66; 297 NW2d 863 (1980); *People v Parks,* 57 Mich App 738; 226 NW2d 710 (1975) [*People v Bragdon, supra,* p 199].

See also, *People v Peterson,* 450 Mich 349, 352; 537 NW2d 857 (1995) (re-affirming holding in *People v Beckley,* 434 Mich 691; 456 NW2d 391 (1990), that an expert in a child sexual abuse case may not testify that the defendant is guilty); *People v Horton,* (1997 Mich. App LEXIS 3107) (granting new trial in breaking and entering case where police chief testified that, in his opinion, the defendant and an accomplice were the ones that committed the offense); *State v Steadman,* 855 P2d 919 (Kan, 1993) (detectives improperly testified that in their opinion the defendant was guilty and exhibited the pressure a guilty person feels).

In the present case, trial counsel was ineffective where he failed to object to the officer's reference to a "mug shot." The reference to a defendant's prior "mug shot" constituted an error requiring reversal. Here, Officer Ali Jaber was relating how he received an "anonymous tip" that named a "specific individual" and he compared a "mugging shot" to a "sketch," (T. 11/20, 158-59).

For this reason, due process requires a new trial. Const 1963, art 1, § 17, 20; US Const, Ams VI; XIV. In the alternative, the matter should be remanded to the trial court for a hearing as to why trial counsel did not object. *People v Ginther,* 390 Mich 436 (1973).

14

RELIEF REQUESTED

For the above reasons, I request that this Court GRANT leave to appeal, and GRANT any

other relief this Court decides that I am entitled to receive.

Sincerely,

Howard James McKnight # 687302
Defendant-Appellant in Pro Per
St. Louis Correctional Facility
8585 N. Croswell Rd
St. Louis Michigan, 48880

Dated: 6-8, 2015                          Name Howard McKnight

15

# STATE OF MICHIGAN

# IN THE SUPREME COURT

**PEOPLE OF THE STATE OF MICHIGAN,**

                       Plaintiff-Appellee                      Supreme Court No.

      -v-                                         COA No. 319979

                                               L.C No.13-000628-FC

**Howard James McKnight,**

                       Defendant-Appellant,

_____/

Wayne County Prosecutor
12th Floor Appellant Division
1441 Antoine Street
Detroit, Michigan 48226


------------------------------------------------------------

Howard James McKnight
M.D.O.C. No. 687302
St. Louis Correctional Facility
8585 N. Croswell Road
St. Louis, Michigan  48880


## MOTION TO WAIVE FEES

    Now comes Defendant-Appellant herein,  Howard James McKnight, proceeding in pro per in the above-captioned case, and pursuant to MCR 7.319,  he requests that this Court  waive the filing fees for this case as he is indigent and cannot afford to pay them. Appellant states as follows:

    1. Defendant-Appellant is currently incarcerated at the St. Louis Correctional Facility, which is located at 8585 N. Croswell Rd. St. Louis, Michigan 48880.

    2.  Appellant has been in the Department of Corrections since his incarceration  he, as a result, has no job whatsoever and together with his having no dependable source of income since his arrest ,he is unable to pay the required filing fees.

    For all the above stated reasons Mr. McKnight, request that this Honorable Court order

1

## STATE OF MICHIGAN
## IN THE SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,
        Plaintiff-Appellee,

           Michigan Supreme Court
           No. _____

-v-

           Court of Appeals No.319979

HOWARD JAMES MCKNIGHT,
        Defendant-Appellant.

           Trial Court No. 13-000628-FC

_____/

## AFFIDAVIT OF INDIGENCY

My name is Howard James McKnight.  I am currently in prison at the St. Louis Correctional Facility, 8585 N. Croswell Rd, St. Louis Michigan, 48880.  My Prison number is 687302.  My income and assets are:

|   | |
|---|---|
|   | My only source of income is from my prison job. |
| x | I have no income. |
|   | I have no assets (stocks, bonds, property) which can be quickly changed into cash. |
| x | I cannot pay the filing fees for the attached application. |

I ask this Court to waive the filing fee in this matter.   I declare that the statements above are true to the best of my knowledge, information and belief.

Howard James McKnight
Defendant -Appellant in Pro Per

Dated: _6- 8_ , 2015             Name _Howard McKnight_

# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

HOWARD JAMES MCKNIGHT,

        Defendant-Appellant.

UNPUBLISHED
April 21, 2015

No. 319979
Wayne Circuit Court
LC No. 13-000628-FC

---

Before: BECKERING, P.J., and CAVANAGH and SAAD, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions of two counts of kidnapping, MCL 750.349, two counts of armed robbery, MCL 750.529, first-degree criminal sexual conduct (sexual penetration occurring during any other felony), MCL 750.520b(1)(c), two counts of felonious assault, MCL 750.82, felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. We affirm.

Defendant perpetrated these criminal acts on a man and woman when their vehicle became disabled in the City of Detroit after leaving the Motor City Casino. Defendant approached the victims, offered to provide assistance, then robbed them at gunpoint and raped the female victim while holding a gun to her chest. As defendant was running away from the scene, he fired three gunshots at the victims. Subsequently, a composite sketch of the perpetrator was generated and it was released to the media. An anonymous tip identified defendant as the perpetrator and, after the sketch was compared to a photograph of defendant, he was apprehended. While in police custody, defendant made several incriminating statements to three different police officers, including that he paid the female victim for sex. Defendant was subsequently identified in a corporeal lineup and at trial.

On appeal, defendant first argues that Detroit Police Officer Alphonso Tinsley's testimony that a photograph of defendant "reflects a composite sketch prepared by him" encroached on the province of the jury. We disagree.

Preserved evidentiary rulings are reviewed for an abuse of discretion, which occurs when the trial court chooses an outcome that falls outside the range of reasonable and principled outcomes. *People v Unger*, 278 Mich App 210, 216-217; 749 NW2d 272 (2008).

-1-

Officer Tinsley prepared the computer generated composite sketch of the perpetrator. During the prosecution's examination of Officer Tinsley, he was asked if he ever did any follow-up with regard to his sketches, to see how close and accurate his sketches were after a person was arrested. Officer Tinsley replied in the affirmative. Then the prosecutor showed him both the composite sketch drawn in this case and a photograph of defendant and asked if he had compared them. Officer Tinsley said that he did. The prosecutor then asked: "[I]f in fact the sketch is of that person, is there anything you would change in the work you had done?" And Officer Tinsley replied: "In this particular one, no."

Defendant appears to argue that Officer Tinsley's testimony impermissibly encroached on the province of the jury because he implied that defendant was the person in both the sketch and the photograph. In support of his argument, defendant relies on this Court's holding in *People v Fomby*, 300 Mich App 46; 831 NW2d 887 (2013). In that case, a police officer, who was also a video forensic technician, provided testimony regarding still-frame photographs of individuals that were made from a surveillance videotape of a shooting incident. *Id*. at 48-49. On appeal, the defendant challenged the testimony as invading the province of the jury, but we disagreed because the officer "did not identify defendant in the video or still images." *Id*. at 53. Noting that a witness cannot express an opinion on the defendant's guilt or innocence, we concluded that the officer "expressed no such opinion." *Id*.

Similarly, in this case, Officer Tinsley expressed no opinion on defendant's guilt or innocence of the charged offenses. Unlike in the *Fomby* case, here, a surveillance videotape of the criminal acts in progress was not available as evidence. Officer Tinsley merely testified that, comparing his composite sketch to defendant's photograph, he would make no changes to his composite sketch. He did not express any opinion as to whether defendant was, indeed, the perpetrator of the crimes. Thus, the issue whether defendant was guilty of the charged crimes was properly left to the jury. See *id*. at 52-53. However, even if the challenged testimony was improperly admitted into evidence, it was harmless. See MCL 769.26. There was overwhelming evidence of defendant's identity. Both victims identified defendant as the perpetrator and they had extensive interactions with him. Defendant also made several incriminating statements to three police officers, including that he paid the victim for sex. Accordingly, defendant has not established that any such error undermined the reliability of the verdict. See *People v Feezel*, 486 Mich 184, 192; 783 NW2d 67 (2010).

Defendant also argues that Officer Kane impermissibly expressed an opinion on defendant's guilt when he testified that the warrant for defendant's arrest was based on: the composite sketch, the lineup identification by one of the victims, the proximity of defendant's residence to the crime scene (about two minutes walking), and the incriminating statements defendant made to three police officers. Defendant claims, without explanation, that Officer Kane's testimony invaded the province of the jury. But, again, Officer Kane did not express any opinion as to whether defendant was, indeed, the perpetrator of the crimes. Rather, as in *People v Heft*, 299 Mich App 69, 82-83; 829 NW2d 266 (2012), here, Officer Kane was merely explaining the steps of the police investigation from personal perception as the officer-in-charge of the case. *Id*. at 83, citing MRE 701. And this testimony was elicited on redirect examination after defense counsel had cross-examined Officer Kane as to why the police investigation focused only on defendant and not on another person of interest, implying that the police did not conduct a proper investigation into the identity of the perpetrator before defendant was arrested.

Accordingly, the trial court did not abuse its discretion in admitting Officer Kane's testimony. See *Unger*, 278 Mich App at 216-217.

Finally, defendant argues that he was denied the effective assistance of counsel. We disagree. Because defendant did not move for a *Ginther*[1] hearing or a new trial on the basis of ineffective assistance of counsel, our review is limited to mistakes apparent on the record. See *People v Rodgers*, 248 Mich App 702, 713-714; 645 NW2d 294 (2001).

The United States and Michigan Constitutions guarantee a defendant the right to effective assistance of counsel. US Const, Am VI; Const 1963, art 1, § 20; *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). To establish a claim of ineffective assistance of counsel, the defendant must show that "(1) defense counsel's performance was so deficient that it fell below an objective standard of reasonableness and (2) there is a reasonable probability that defense counsel's deficient performance prejudiced the defendant." *Heft*, 299 Mich App at 80-81. A defendant is prejudiced if, but for defense counsel's errors, the result of the proceeding would have been different. *Id.* at 81. "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Eisen*, 296 Mich App 326, 329; 820 NW2d 229 (2012) (citation omitted).

Defendant asserts that his trial counsel was ineffective for failing to object to Officer Jaber's testimony that defendant "had a case outstanding, a mug shot on file and a 'strong resemblance' to the sketch." We note that Officer Jaber's testimony explained how an anonymous tip led to the police investigation, which led to defendant's arrest. Specifically, Officer Jaber testified:

> *Q.* Okay. And at that point in time the tip itself, did it direct you to a specific individual?
>
> *A.* Yes.
>
> *Q.* Okay. Was that individual named in that anonymous tip?
>
> *A.* Yes.
>
> *Q.* All right. And what did you do when you received that information concerning checking it out or whatever?
>
> *A.* Looked up the photo, mugging photo of that name that was listed, and I compared it to a sketch that I had.
>
> *Q.* And what - - do you recall what the sketch, what crime that was involving?

---

[1] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

-3-

*A.* Yeah, that was a [sic] armed robbery and CSC, a rape.

*Q.* Okay, that had occurred when?

*A.* I believe it was - - happened January 1st.

*Q.* Okay. And what did you do at that point?

*A.* Well at that point the name that I had was Howard McKnight. I ran it in LEIN, in the Law Enforcement Network.

*Q.* Okay. And did you do anything else?

*A.* Yes. I compared it to the sketch like the photo. It had a strong resemblance and when I checked his name he has a outstanding - -

*Q.* Okay. Now let me ask you this.

Contrary to defendant's claim, Officer Jaber did not testify that defendant had a "case outstanding." The prosecutor interrupted Officer Jaber before he was able to state what was "outstanding." Therefore, any objection that Officer Jaber's testimony was improper would have been meritless. Further, Officer Jaber's reference to a "mugging photo" was a vague and brief reference to the identification procedure used by the police. It was not inherently prejudicial or deliberately interjected into the proceedings; thus, an objection would have been meritless. See *People v Hoerl*, 88 Mich App 693, 702-703; 278 NW2d 721 (1979). And Officer Jaber's testimony that defendant's photo bore a strong resemblance to the sketch explained the identification procedure used during the police investigation and an objection would have been meritless. Because counsel is not required to make meritless or futile objections, *Eisen*, 296 Mich App at 329, defense counsel's performance did not fall below an objective standard of reasonableness. Accordingly, defendant's related claim that his counsel was ineffective for failing to move for a mistrial after Officer Jaber's testimony is without merit.

Affirmed.

/s/ Jane M. Beckering
/s/ Mark J. Cavanagh
/s/ Henry William Saad

-4-

STATE OF MICHIGAN
IN THE COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

                                             Docket No. 319979

HOWARD JAMES MCKNIGHT,

      Defendant-Appellant.

_____/

Wayne Circuit Court No. 2013-000628-01-FC

_____

DEFENDANT-APPELLANT'S BRIEF ON APPEAL
* * * ORAL ARGUMENT REQUESTED * * *

CERTIFICATION OF SERVICE



JONATHAN B.D. SIMON  (P35596)
Attorney for Defendant-Appellant
P.O. Box 2373
Birmingham, Michigan  48012-2373
(248) 433-1980

## TABLE OF CONTENTS

Page

STATEMENT OF APPELLATE JURISDICTION ................................... ii

INDEX OF AUTHORITIES ...................................................... iii

STATEMENT OF QUESTIONS PRESENTED ...................................... v

STATEMENT OF FACTS ....................................................... 1

ARGUMENT I:

    OFFICER TINSLEY'S OPINION THAT A PHOTOGRAPH OF APPELLANT
    REFLECTS A COMPOSITE SKETCH PREPARED BY HIM IMPERMISSIBLY
    ENCROACHED ON THE PROVINCE OF THE JURY ......................... 6

ARGUMENT II:

    THE TRIAL COURT VIOLATED APPELLANT'S DUE PROCESS RIGHTS BY
    PERMITTING THE PROSECUTOR TO SOLICIT FROM THE OFFICER IN
    CHARGE OPINION EVIDENCE OF APPELLANT'S ALLEGED GUILT .......... 9

ARGUMENT III:

    APPELLANT WAS DENIED A FAIR TRIAL AND DEFENSE TRIAL COUNSEL
    WAS CONSTITUTIONALLY INEFFECTIVE IN FAILING TO MOVE FOR A
    MISTRIAL AFTER A POLICE OFFICER TESTIFIED THAT HE COMPARED
    THE COMPOSITE SKETCH WITH A MUG SHOT OF APPELLANT AND
    COUNSEL WAS INEFFECTIVE IN FAILING TO OBJECT .................... 11

RELIEF REQUESTED ......................................................... 16

## STATEMENT OF APPELLATE JURISDICTION

Appellant was convicted in the Wayne County Circuit Court by jury trial. A judgment of sentence was entered December 12, 2013. A claim of appeal was filed January 13, 2014 by the trial court pursuant to his request for appointment of appellate counsel, received January 7, 2014, as authorized by MCR 6.425(F)(3). This Court has jurisdiction in this appeal of right provided for by Mich Const 1963, art 1, §20; MCL 600.308(1), MCL 770.3, MCR 7.203(A), MCR 7.204(A)(2).

INDEX OF AUTHORITIES

CASES                                                                                                          Page

Cooper v Sowders, 837 F2d 284 (CA 6, 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Freed v Salas, 286 Mich App 300 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Lisenba v California, 314 US 219; 62 S Ct 280; 86 L Ed 166 (1941) . . . . . . . . . . . . . . . . . . . . 11

Old Chief v United States, 519 US 172; 117 S Ct 644; 136 L Ed 2d 574 (1997) . . . . . . . . . . . 14

People v Barclay, 208 Mich App 670 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

People v Beckley, 434 Mich 691 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

People v Bragdon, 142 Mich App 197 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7,9

People v Carbin, 463 Mich 590 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

People v Carines, 460 Mich 750 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

People v Coy, 258 Mich App 1 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

People v Dalessandro, 165 Mich App 569 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

People v Drossart, 99 Mich App 66 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

People v Fomby, 300 Mich. App. 46 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6,7,8

People v Henry, 239 Mich App 140 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

People v Hoag, 460 Mich 1 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

People v Holly, 129 Mich App 405 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

People v Horn, 279 Mich App 31 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

People v Horton, unpublished opinion per curiam of the Michigan Court of Appeals,
    decided August 5, 1997 (Docket No. 193854) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

People v Lukity, 460 Mich 484 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

People v McCartney, 46 Mich App 691 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

People v McCarver (On Remand), 87 Mich App 12 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . 12,13

People v Page, 41 Mich App 99 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

People v Parks, 57 Mich App 738 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

People v Peterson, 450 Mich 349 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6,9

People v Pickens, 446 Mich 298 (1994) ........................................ 12,13

People v Swint, 225 Mich App 353 (1997) ...................................... 14

People v Ullah, 216 Mich App 669 (1996) ..................................... 14

People v Unger, 278 Mich App 210 (2008) ..................................... 6

People v Wallen, 47 Mich App 612 (1973) ..................................... 13

People v Wilson, 194 Mich App 599 (1992) .................................... 9

Strickland v Washington, 466 US 668, 104 SCt 2052, 80 L Ed 2d 674 (1984) ........ 12,13,14

United States v Ailstock, 546 F2d 1285 (CA 6, 1976) ............................. 11

United States v Begay, 42 F3d 486 (CA 9, 1994) ................................ 7,8

United States v LaPierre, 998 F2d 1460 (CA9, 1993) ............................ 7

United States v Rodriguez-Adorno, 695 F3d 32 (CA 1, 2012) ...................... 7

## STATUTES

MCL 750.82 ................................................................ 1

MCL 750.224f .............................................................. 1

MCL 750.349 .............................................................. 1

MCL 750.520b ............................................................. 1

MCL 750.529 .............................................................. 1

## CONSTITUTIONS

Const 1963, art 1, § 17 ...................................................... 10,11

Const 1963, Art 1 § 20 ...................................................... 11

US Const; Am VI ........................................................... 11

US Const, Am XIV ......................................................... 9,10,11

## RULES OF EVIDENCE

FRE 701 ................................................................... 7

MRE 402 .................................................................. 6

iv

MRE 403 ........................................................................... 13

MRE 701 ........................................................................... 6,7,8

MRE 702 ........................................................................... 6,8

MRE 704 ........................................................................... 9

## STATEMENT OF QUESTIONS PRESENTED

### I

WHETHER OFFICER TINSLEY'S OPINION THAT A PHOTOGRAPH OF APPELLANT REFLECTS A COMPOSITE SKETCH PREPARED BY HIM IMPERMISSIBLY ENCROACHED ON THE PROVINCE OF THE JURY

Defendant-Appellant answers this question "Yes".
Plaintiff-Appellee answered this question "No".
The court below answered this question "No".

### II

DID THE TRIAL COURT VIOLATE APPELLANT'S DUE PROCESS RIGHTS BY PERMITTING THE PROSECUTOR TO SOLICIT FROM THE OFFICER IN CHARGE OPINION EVIDENCE OF APPELLANT'S ALLEGED GUILT.

Defendant-Appellant answers this question "Yes".
Plaintiff-Appellee answered this question "No".
The court below answered this question "No".

### III

WAS APPELLANT DENIED A FAIR TRIAL AND DEFENSE TRIAL COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE IN FAILING TO MOVE FOR A MISTRIAL AFTER A POLICE OFFICER TESTIFIED THAT HE COMPARED THE COMPOSITE SKETCH WITH A MUG SHOT OF APPELLANT AND WAS COUNSEL INEFFECTIVE IN FAILING TO OBJECT.

Defendant-Appellant answers this question "Yes".
Plaintiff-Appellee answered this question "No".
The court below answered this question "No".

## STATEMENT OF FACTS

"T1"-"T5" and "S" refer to transcripts of the November 18, 19, 20, 21, 22, 2013 jury trial and December 12, 2013 sentencing, held in the Wayne Circuit Court before the Hon. Edward Ewell, Jr. Numbers following transcript references are pages therein.

Defendant-Appellant Howard McKnight (hereinafter "Appellant") was charged with two counts of kidnapping [MCL 750.349], alleging that he knowingly restrained Lucille James with the intent to commit criminal sexual conduct and James Stone to use him as a shield or hostage; two counts of armed robbery [MCL 750.529], alleging that he assaulted or put James and Stone in fear in the course of committing a larceny, and that he did so while in possession of a pistol; first degree criminal sexual conduct [MCL 750.520b(1)(c)], alleging intercourse with James during the commission of kidnapping and/or armed robbery; two counts of felonious assault [MCL 750.82], felon in possession of a firearm [MCL 750.224f] and felony firearm during the commission or attempted commission of armed robbery or criminal sexual conduct or kidnapping or felonious assault. All of the offenses allegedly occurred December 31, 2012 at Findlay and Bradford in Detroit.

On November 18, 2012, Appellant appeared for trial. After preliminary matters, (T1 4-26, 160-162), jury selection, (T1 26-150), preliminary jury instructions (T1 150-160) and opening statements, (T1 164-192), the following evidence was presented:

Lucille James, (T2 52), stated that at about 9:00 p.m. on December 31, 2012 she was with her husband, James Stone on Gratiot, returning home from the Motor City Casino in a truck they had purchased that morning. (T2 5-8). A tire went flat and they pulled onto a side street. (T2 10-11). A friendly man wearing black spoke with her husband and left. What appeared to her as the same man wearing what appeared to be the same clothes returned five or ten minutes later and again spoke with her husband in what sounded like the same voice. (T2 12-21, 55-59, 69). He then placed a gun to her husband, who told her the man wanted her rings or he would shoot. Her husband removed them from her fingers and gave them to the man, who then demanded her necklace and cash, which were also relinquished. (T2 22-25). The man then told her husband "I'm gon' fuck your wife", had him return to the driver's seat and place his hands on the steering wheel, walked around to the

1

passenger side, told her to remove her pants, placed the gun to her chest and his penis in her vagina one time for two to three minutes. He did not wear a condom and ejaculated . He then ran away, turned and fired three shots at them. (T2 26-36, 61-64, 69-72, but see 66-67). She called 911. After waiting 30 minutes they walked home and she told her son James James. He drove her to Receiving Hospital. From there she went to St. John's Hospital for a physical examination and evidence collection. (T2 39-43, but see 61-62). Days later she viewed a lineup. She did not see the man's face, but identified Appellant - in the lineup and again in court - not by his face which she did not see, but by his body image, (T2 44-52, 54-55, 59-60, 64), which she described as normal. (T2 61).

James James is a son of the complainants. (T2 74-75). Sometime after midnight, January 1, 2013 he was awakened by a his parents returning home hysterical and crying. His father reported they had been robbed and his mother raped. (T2 76-77). He took her to St. John's Hospital. (T2 78).

Jesse James (T2 is another son of the complainants. (T2 80). At about 11:30 p.m. December 31, 2012 he received a call from his parents, who reported having a flat tire and had a young male provide their location. According to the man, they were on Bradford between Whithorn and Findlay. At about 2:00 a.m. January 1, 2013 his brother James came to his house hysterical and crying and told him their parents had been robbed and his mother raped. He rushed to the hospital. (T2 81-89).

Detroit Police Officer Alphonso Tinsley works in the Graphic Art Section. He interviews witnesses to obtain descriptions from which he prepares computer generated renderings of persons they describe. (T2 91- 93). On January 3, 2013 he interviewed the complainants and prepared a composite sketch of a person as described by Stone. (T2 94-99, 104; T4 145-152). Over counsel's objection, Tinsley was permitted to compare that sketch with a photograph of Appellant and state that the photo reflects the sketch and that he would make no changes to the sketch. (T2 100-103).

Detroit Police Officer Lori Briggs is an evidence technician. On January 2, 2013 she photographed complainants' vehicle and processed it for DNA and latent fingerprints. (T2 110-112). She found no usable prints, (T2 114), and no reason to believe there might be any bodily fluid. (T2 115). She did not search for hair or clothing fiber as she was not instructed to do so. (T2 116-117).

2

Jerry Golson stated that he lived on Bradford neard Findlay at the time. (T2 127-128). At 1:00 or 2:00 a.m. January 1, 2013 he noticed a truck beside his home with a flat tire. He turned on his lights and saw an older man emerged from the passenger side and try to push it. (T2 128-137). He told police that the person he saw was an older man who hangs out in the neighborhood. (T2 141, 147-148). On November 18, 2013he attended a corporal lineup which included Appellant. He made no identification, noting all the participants were younger than the man he saw. (T2 138-145).

Mikehl Hafner is a forensic scientist at the Michigan State Police Northville Crime Laboratory and an expert in bodily fluids identification. (T2 158-159). He received the rape kit collected from Lucille James and a buccal swab collected from James Stone (T2 160-163). He took cuttings of the swabs. Hafner found no enzymes on the vaginal swab and sperm cells but no semen on the vaginal slide. The anal swab was negative for semen, but did contain sperm cells. The cervical swabs contained no evidence of semen. (T2 167-171). He packaged the swabs for DNA testing, along with the buccal swabs collected from Stone, Appellant and Robinson. (T2 172-175).

Brian Schloff is a forensic scientist at the Michigan State Police Northville Crime Laboratory and an expert in DNA analysis and bodily fluid identification. (T3 5-6). He received Lucille James' vaginal and anal swabs for extraction of sperm cells for DNA analysis, and known buccal swabs from Appellant for comparison and James Stone for elimination. (T3 10-11, 14-17). He determined that the DNA types associated with the vaginal swabs are consistent with a mixture of DNA types from James and one additional donor. Stone could not be excluded as a donor. Appellant's DNA type was excluded and Schloff determined he was not a contributor to that material. (T3 18- 20, 56).

As to the anal swabs, the DNA types were consistent with James and at least two additional donors. Stone could not be excluded as 15 of the 16 locations could be attributed to him. (T3 20-22). As to the third donor, the samples were very limited, very low and only occurred at a couple of locations. A comparison of Appellant's DNA type to this mixture was inconclusive. (T3 23-26). The DNA profile of Ali Robinson was excluded from both the vaginal and anal swabs. (T3 30-31).

According to Schloff, with brief penetration and no ejaculation, he would not expect to find

3

the assailant's DNA. (T3 32-33). Further, that a person excluded from the vaginal swab could still be considered inconclusive as to the anal swab even in the absence of anal penetration. (T3 53-54).

Nicole Schaller is registered nurse, (T3 60), and an expert in sexual assault nurse examination. (T3 63). On January 1, 2013 she interviewed and examined James and collected and preserved oral, vaginas and anal swabs. (T3 63-96). According to Schaller, James reported no ejaculation (T3 82) and no anal penetration. (T3 79). She detected no injury to James. (T3 87-88, 96).

Detroit Police Officer Robert Kane is the officer in charge of the case. (T3 101). In late January, 2013 the sketch generated interest relating to Ali Deshawn Robinson, who was interviewed, administered a buccal swab for testing and whose photograph was used in a lineup shown to James and Stone. He was not identified and he was eliminated as a suspect. (T3 102-111). He determined Golston only saw Stone exit the vehicle and did not have Golston participate in the lineup. He conceded that Golston's described a 30-40 year old person, which did not fit Stone. (T3 115-118, 135). Kane sought a warrant charging Appellant with these offenses based on the sketch, his lineup identification by complainants; the proximity of his residence to the crime scene and information from three police officers that he made statements placing himself there that night. (T3 132- 133).

Rebecca Tieppo is the attorney who was present at the January 11, 2013 photo lineup conducted for the complainants. (T3 141-142). Other than some concern about the hairstyles of the respective participants, she recalled nothing unduly suggestive about the proceeding. (T3 144-148).

Detroit Police Officer Ali Jaber stated that on January 10, 2013 he received an anonymous tip involving naming Appellant and compared a mug photo of Appellant with the sketch prepared in this case. In his opinion they bore a "strong resemblance". (T3 157-159). Jaber and Officer Parra transported Appellant from the Schaefer station. According to Jabor, while he was preparing paperwork, Appellant stated he knew it was about the rape on Dresden and Findlay that they had sex on the back seat for which he paid her $20.00; and that they had previously had sex. (T3 160-166).

Detroit Police Officer Connie Watts processes prisoners. Sometime after midnight, January 13, 2013 she had contact with Appellant, who was brought to a Second Precinct cell block by Jaber.

4

(T4 5-10). After Jaber left, she was processing Appellant's intake information, he told her he was being held relative in connection with a rape reported on television. He further stated that when the woman's husband left to get a part he paid her $20 to have sex with the her. (T4 11-15). Watts contacted the Sex Crimes Unit to report the information and to come interrogate Appellant. (T4 16). She did not consider the dialogue an interrogation or attempt to activate nearby recording equipment or have Appellant reduce his alleged comments to writing because "That's not my job". (T4 18-21).

Detroit Police Sergeant Jose Ortiz stated that at 8:45 p.m. January 10, 2013 he went to speak with Appellant. As he was preparing the interrogation form, Appellant spontaneously stated he saw two men helping an elderly couple whose car was stuck in the snow, and that he had sex with a prostitute in the same area. (T4 29-35). The purported statement was not videotaped. (T4 46-47)

Detroit Police Officer Jeffrey Manson stated that on January 11, 2013 he was present for a live lineup. (T4 49-51). He observed both witnesses separately identified Appellant. (T4 52-56).

James Stone stated that on December 31, 2012 he had a flat tire on Gratiot, pulled onto a side street and became stuck. (T4 63-64). A man he identified as Appellant offered help, (T4 64-70), and later returned with a handgun. (T4 67). He demanded Stone's wife's rings, necklace and money, said "I want to fuck your wife", placed the gun to James' chest, ordered Stone into the truck and his hands on the wheel, approached James and had her lay her head on Stone's leg. The man fired three shots in their direction as he ran away. (T4 77- 93). They walked home and called the police, (T4 94), went to St. John's Hospital and then Receiving for examination. (T4 95-96). He gave a statement and description to the police and identified Appellant from a corporal lineup. (T4 97-103)

The parties stipulated that Appellant had a prior specified felony conviction, (T4 143-144, and the parties rested. (T4 144; T5 17). After closing arguments, (T5 17-44) and final jury instructions (T5 45-64), Appellant was found guilty as charged. (T5 67-70). From his December 12, 2013 sentence to concurrent terms of 30-60 years for kidnapping, 25-60 years for armed robbery, 2-4 years for felonious assault and 1-5 years for felon in possession of a firearm, consecutive to 30-60 years for criminal sexual, consecutive to 2 years for felony firearm, (S 16), he appeals as of right.

5

## ARGUMENT I

### OFFICER TINSLEY'S OPINION THAT A PHOTOGRAPH OF APPELLANT REFLECTS A COMPOSITE SKETCH PREPARED BY HIM IMPERMISSIBLY ENCROACHED ON THE PROVINCE OF THE JURY

### Issue Preservation and Standard of Review

This challenge was preserved by a contemporaneous objection during trial. (T2 101-103). Generally, the trial court's evidentiary rulings are reviewed for abuse of discretion. People v Unger, 278 Mich App 210, 216 (2008). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." Id. at 217. However, decisions involving the admission of evidence frequently involve preliminary questions of law, such as whether a rule of evidence or statute precludes the admissibility of the evidence, and such a decision is a question of law that is reviewed de novo. People v Lukity, 460 Mich 484, 488 (1999).

### Discussion

Appellant was charged with two counts each of kidnapping, armed robbery and felonious assault, as well as first degree criminal sexual conduct, felon in possession of a firearm and felony firearm, all alleged to have occurred December 31, 2012. Detroit Police Officer Alphonso Tinsley stated that days later he interviewed the complainants and prepared a computer generated composite sketch of the assailant. Tinsley was not qualified as an expert. Over counsel's objection, Tinsley was permitted to compare that sketch with a photograph of Appellant and state that the photo reflects the sketch and that he would make no changes to the sketch. (T2 100-103). Because this testimony impermissibly encroached on the province of the jury, Appellant's conviction must be reversed.

MRE 701 provides:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

In addition, "to be admissible under MRE 702, the testimony must first be determined to be legally relevant. MRE 402." People v Peterson, 450 Mich 349, 363 (1995).

In People v Fomby, 300 Mich. App. 46 (2013) the Court of Appeals ruled that a police officer

6

who identified individuals depicted in still frame photos taken from surveillance video was a lay rather than an expert witness. The officer viewed "the six hours of video. . . . and still photos several times to reach his conclusions and opinions," and testified that the "individuals depicted in the still frames . . . [were] the same individuals in the actual video." Id. Importantly for the court, the officer did not identify the defendant. Id.

Tracking the language of MRE 701, Fomby found the officer to be a lay witness, first, because "his testimony was based upon his own perceptions of the video itself." Id. Second, the court determined that the officer's testimony "helped the jury to correctly and efficiently determine" the identity of the individuals depicted in the footage. Id. In making this determination, the court analogized to a federal case that found "one viewing of the videotape of a demonstration involving over 200 people" insufficient "for a jury to adequately discern the events depicted," and reasoned that the jury would similarly have difficulty identifying the depicted individuals given the length of the surveillance footage. Id., quoting United States v Begay, 42 F3d 486, 503 (CA 9, 1994).

Having concluded that the officer was a lay witness under MRE 701, the Fomby Court turned to the issue of whether his testimony had impermissibly invaded the province of the jury. Id. The court emphasized that "a witness cannot express an opinion on the defendant's guilt or innocence," Id., quoting People v Bragdon, 142 Mich App 197, 199 (1985), and cited federal case law for the proposition that "the issue of whether the defendant in the courtroom is the person pictured in a surveillance photo 'was a determination properly left to the jury.' " Id., quoting United States v LaPierre, 998 F2d 1460, 1463 (CA9, 1993). Indeed, "where a witness is in no better position than the jury to make an identification from a video or photograph, the testimony is inadmissible under FRE 701." Id., citing United States v Rodriguez-Adorno, 695 F3d 32, 40 (CA 1, 2012). Because the officer in Fomby (1) did not identify the defendant and (2) had created the still images himself and was therefore "in the best position to identify the individuals in the photographs as being the same as those depicted in the video," the Court of Appeals found his testimony admissible. Id. In contrast, Officer Tinsley, testifying as a lay witness, was in no better position than the jury to compare that

7

Officer Tinsley, testifying as a lay witness, was in no better position than the jury to compare that photograph with the computer assisted composite sketch he prepared based on information provided by complainant Stone. He nevertheless opined that the sketch depicted Appellant's photograph, and in doing so impermissibly invaded the province of the jury.

Officer Tinsley testified as a lay witness. His testimony was based on his own perceptions of the sketch and the still photograph, and "not based in scientific, technical, or other specialized knowledge within the scope of Rule 702." MRE 701. Indeed, counsel pointed out that Tinsley "has not been shown to be qualified to make that type of professional expert opinion. (T2 102).

Officer Tinsley was in no better position than the jury to make an comparison of the photograph and the sketch, and in any case could not permissibly express an opinion as to Appellant's guilt or innocence. Unlike the videos at issue in Begay and Fomby, which were complicated and lengthy, involving hundreds of persons captured over six hours of footage, the task at hand was a simple one: to decide whether the person depicted in the sketch was the person depicted in a photograph of Appellant -- that is, whether Appellant was guilty of the crimes of which he had been charged. This question, of course, was precisely the question to be decided by the jury.

By purporting to identify Appellant in the sketch, Officer Tinsley impermissibly usurped the essential role of the jury. Because the question of Appellant's guilt or innocence was one exclusively for the jury to decide, and because, as a police officer, Officer Tinsley's testimony would have been particularly persuasive, the trial court should not have allowed him to share his opinion concerning Appellant's guilt or innocence. By permitting Officer Tinsley to opine definitively that the sketch depicted Appellant, the trial court effectively removed from the jury the decision on the ultimate issue of his guilt or innocence. See Freed v Salas, 286 Mich App 300, 347 (2009).

Officer Tinsley was in no better a position than the jury to decide whether the man sitting before them was the same man depicted in the sketch. Because his opinion testimony impermissibly invaded the province of the jury and effectively foreclosed its ability to determine Appellant's guilt or innocence, the verdict should be reversed.

8

ARGUMENT II

## THE TRIAL COURT VIOLATED APPELLANT'S DUE PROCESS RIGHTS BY PERMITTING THE PROSECUTOR TO SOLICIT FROM THE OFFICER IN CHARGE OPINION EVIDENCE OF APPELLANT'S ALLEGED GUILT.

Issue Preservation and Standard of Review

the issue was preserved by defense counsel's objection, (T3 120-131) and motion for mistrial. (T3 137-140). The "abuse of discretion" standard of review applies to a trial court's decision to admit opinion evidence. See generally, People v Wilson, 194 Mich App 599, 602 (1992). This Court also reviews the trial court's denial of a motion for mistrial on an abuse of discretion standard. People v Coy, 258 Mich App 1, 17 (2003). "A trial court abuses its discretion when it fails to select a principled outcome." People v Horn, 279 Mich App 31, 35 (2008).

Discussion

MRE 704 provides:

> Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.

However, in criminal cases, the Due Process Clause of US Const, Am XIV prohibits introduction of opinion testimony as to a defendant's guilt. For example, in Cooper v Sowders, 837 F2d 284 (CA 6, 1988), the Sixth Circuit granted Federal habeas relief in a murder case where a detective testified, over objection, that in the detective's opinion the evidence found linked only the defendant to the crime. Similarly, in People v Bragdon, 142 Mich App 197, 199 (1985), this Court remanded for a new trial where the prosecutor had asked the defendant "so you're guilty of the crime?":

> Absent a valid plea, the issue of an accused's guilt or innocence is a question for the trier of fact. As with matters of credibility, it is clear that a witness cannot express an opinion on the defendant's guilt or innocence of the charged offense. See, People v Drossart, 99 Mich App 66; 297 NW2d 863 (1980); People v Parks, 57 Mich App 738; 226 NW2d 710 (1975).

See also, People v Peterson, 450 Mich 349, 352 (1995) (re-affirming holding in People v Beckley, 434 Mich 691 (1990), that an expert in a child sexual abuse case may not testify that the defendant is guilty); People v Horton, unpublished opinion per curiam of the Michigan Court of Appeals, decided August 5, 1997 (Docket No. 193854) (granting new trial where police chief testified that,

9

in his opinion, the defendant and an accomplice were the ones that committed the offense).

Applying the above principles to the present case, the following exchange occurred when the trial court permitted the prosecutor to question the officer in charge of the case as to the reasons why he requested a warrant for the arrest of Appellant and discontinued other avenues of investigation.

Officer Kane's testimony that he sought a warrant charging Appellant with these offenses based on the sketch, his lineup identification by complainants; the proximity of his residence to the crime scene and information from three police officers that he made statements placing himself there that night, (T3 132- 133), invaded the province of the jury and permitted him to opine that Appellant was the person the person who committed these offenses. In effect, he gave improper expert testimony that Appellant was guilty.

In this case, where complainant Lucille James identified Appellant only by his "body image"; (T1 61); where eyewitness Jerry Golston made no identification, noting all the participants were younger than the man he saw, (T2 138-145); and where DNA expert Brian Schloff excluded Appellant as a contributor to James' vaginal swab, (T3 18- 20, 56), and determined found the anal swab inconclusive as to Appellant, (T3 23-26)., i is highly likely that the jury relied on Officer Kane's improper opinion testimony in resolving these disputed facts and convicting Appellant. Due process and fairness require a new trial. Const 1963, art 1, § 17; US Const, Am XIV.

ARGUMENT III

APPELLANT WAS DENIED A FAIR TRIAL AND DEFENSE TRIAL COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE IN FAILING TO MOVE FOR A MISTRIAL AFTER A POLICE OFFICER TESTIFIED THAT HE COMPARED THE COMPOSITE SKETCH WITH A MUG SHOT OF APPELLANT AND COUNSEL WAS INEFFECTIVE IN FAILING TO OBJECT.

Issue Preservation and Standard of Review

Appellant did not raise this issue in the trial court. The standard of review for unpreserved constitutional error is for "plain error," People v Carines, 460 Mich 750, 764 (1999). Under this standard, the reviewing court should reverse if clear error affected substantial rights and seriously affected the fairness, integrity, or public reputation of judicial proceedings. Id at 763-764. A defendant may raise ineffective assistance of counsel for the first time on appeal, because it involves a claim of constitutional error which could have been decisive of the outcome. People v Henry, 239 Mich App 140, 146 (1999) (defendant may raise ineffective assistance of counsel for the first time on appeal, with review limited to mistakes apparent in the existing record). The "de novo" standard of review applies to the existing record. See, e.g., People v Barclay, 208 Mich App 670, 672 (1995).

Discussion

Both the due process guarantees of the Michigan and United States constitutions require fundamental fairness in the use of evidence against a criminal defendant. Const 1963, art 1, § 17; US Const, Am XIV. See generally, Lisenba v California, 314 US 219; 62 S Ct 280; 86 L Ed 166 (1941). Accordingly, the improper reference to a defendant's prior acts also violates Federal law. See, e.g., United States v Ailstock, 546 F2d 1285 (CA 6, 1976) (accomplice improperly questioned by prosecutor about conversation in defendant's presence that defendant had been in prison twice).

A criminal defendant in Michigan has a constitutional right to the effective assistance of counsel, US Const; Am VI; Const 1963, Art 1 § 20. Under both the federal and state constitutional standards, a defendant is deprived of the effective assistance of counsel if the attorney's performance falls below an objective standard of reasonableness and the defendant is so prejudiced that he is denied a fair trial and the reasonable probability exists that, but for counsel's conduct, *a different*

11

result would have occurred. Strickland v Washington, 466 US 668, 686, 104 SCt 2052, 80 L Ed 2d 674 (1984); People v Pickens, 446 Mich 298 (1994).

In the present case, during questioning by the prosecutor, Detroit Police Officer Ali Jaber stated that he received an anonymous tip naming Appellant he ran the name in the Law Enforcement Network (LEIN), determined Appellant had a matter outstanding, looked up a mugging photo of Appellant and compared it with the sketch, which had a "strong resemblance". (T3 158-159).

A.    APPELLANT WAS DENIED A FAIR TRIAL WHERE A POLICE OFFICER TESTIFIED THAT APPELLANT HAD A CASE OUTSTANDING, A MUG SHOT ON FILE AND A "STRONG RESEMBLANCE" TO THE SKETCH.

Appellant contends that the deputy's testimony deliberately injected reversible error into the trial. Such testimony by a police witness is subject to closer scrutiny, because, "police witnesses have a special obligation not to venture into such forbidden areas." People v Holly, 129 Mich App 405, 415-416 (1983); People v McCarver (On Remand), 87 Mich App 12, 15 (1978); People v Page, 41 Mich App 99, 101-102 (1972).

In Holly, a police witness provided unresponsive testimony that the defendant had committed other armed robberies. Holly, supra, 129 Mich App at 416. The Court of Appeals noted that the witness, "being a police sergeant and the officer in charge of the case, he should have known better than to volunteer such information. Inadmissible evidence tying a defendant to other crimes is highly prejudicial." Id. Despite this obviously prejudicial error, the Holly Court declined to reverse because, the evidence against the defendant was strong. Id.  In Page, this Court reversed the defendant's conviction because of a highly prejudicial, unsolicited remark by a police witness. The officer told the jury that he had seen the defendant in front of a "dope den." Page, supra, 41 Mich App at 101. The Court found the remark prejudicial despite the fact that the court cautioned the jury to disregard the remark, because the case against the defendant was not especially strong and because the remark came from a police witness. Id at 101-102.  As in Holly and Page, the witness in the instant case was a police officer, and he should have known not to mention Appellant's prior police contacts.

In People v McCartney, 46 Mich App 691, 693-694 (1973), the People called a fingerprint

12

expert who testified to having taken the defendant's fingerprints two years earlier. In reversing the defendant's entering without breaking and larceny convictions, this Court held:

> There is no question that the references by the witness were improper and prejudicial .... We are unimpressed with the assertion that the error was curable by an instruction since the controverted comments by the witness were non-responsive and volunteered. Even if this court were to give the prosecutor the benefit of the doubt as to whether the answers given were truly non-responsive, we feel that the prosecutor has a high degree of duty to insure that police officers do not venture into forbidden areas in their testimony.

Similarly, in People v Wallen, 47 Mich App 612 (1973), this Court ordered a new trial on charges of forgery and uttering and publishing where the prosecutor elicited from a defense witness on cross-examination the fact that the witness had met the defendant while both were in jail. This Court granted relief even in the absence of a timely defense objection. See also, People v McCarver (On Remand), 87 Mich App 12 (1978) (Federal agent improperly testified to executing search warrant to locate firearms illegally possessed by the defendant due to prior felony conviction).

Here, the testimony of Officer Jaber - a seasoned veteran assigned to Headquarters Surveillance - similarly injected gratuitous prejudicial comment of an outstanding case, a mug shot on file and "strong resemblance" to the sketch which denied Appellant was denied a fair trial.

B,    DEFENSE TRIAL COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE IN FAILING TO MOVE FOR A MISTRIAL AFTER JABER'S COMMENTS.

Amazingly, defense counsel did not object or otherwise request a mistrial. Defense counsel should have forcefully argued that the evidence about Appellant's outstanding case, a mug shot on file and "strong resemblance" to the sketch was simply too prejudicial and that any probative value with respect to the testimony was far outweighed by the prejudice. MRE 403. Appellant was denied the effective assistance of counsel, where his trial counsels failed to move for a mistrial, where the prosecutor elicited this highly prejudicial testimony from a veteran officer. In People v Carbin, 463 Mich 590, 599-600 (2001), our Supreme Court restated the test for ineffective assistance of counsel:

> A defendant seeking a new trial on the ground that trial counsel was ineffective bears a heavy burden. To justify reversal under either the federal or state constitutions, a convicted defendant must satisfy the two-part test articulated by the United States Supreme Court in Strickland v Washington, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984). See People v Pickens, 446 Mich 298, 302-303; 521 NW2d 797 (1994).

13

"First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not performing as the 'counsel' guaranteed by the Sixth Amendment." Strickland, supra, at 687. In so doing, the defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy. Id at 690. "Second, the defendant must show that the deficient performance prejudiced the defense." Id at 687. To demonstrate prejudice, the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. Id at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim. See People v Hoag, 460 Mich 1, 6; 594 NW2d 57 (1999) [footnote omitted].

Due process requires suppression of the nature of a defendant's prior conviction, even though relevant, where necessary to avoid unfair prejudice. See generally, People v Swint, 225 Mich App 353 (1997); Old Chief v United States, 519 US 172; 117 S Ct 644; 136 L Ed 2d 574 (1997) (a defendant charged with being a convicted felon in possession of a firearm has the right to mitigate the prejudicial effect of the prior felony conviction as improper character evidence, by offering to stipulate to the existence of the prior conviction, without revealing any details). In People v Ullah, 216 Mich App 669 (1996), the defendant was charged with a criminal sexual assault on the defendant's estranged wife. Defense counsel failed to object to evidence that the defendant had previously beaten up the defendant's wife, where the beatings did not involve sexual assaults. This Court found trial counsel to be ineffective, and granted a new trial.

It was completely unnecessary for Officer Jaber to inform the court that Appellant had outstanding case, a mug shot on file and "strong resemblance" to the sketch. The officer knew or should have known better. At a minimum, defense trial counsel should have immediately asked the trial court to declare a mistrial. There is a real likelihood that disclosure of Appellant's prior contact improperly influenced the jury to convict him on the basis of character.

Michigan follows the federal standard. This standard requires that trial counsel exercise sound trial strategy. See People v Dalessandro, 165 Mich App 569, 577-578 (1988); Strickland, supra. Here, counsels' failure to request a mistrial did not constitute sound trial strategy, as it carried no real potential for increasing Appellant's chances of acquittal. Indeed, failing to request a mistrial

14

was devastating. The officer's prejudicial testimony could very well have been the determining factor in Appellant's conviction. Testimony from the officer could well have cemented in the court's mind that Appellant was likely he was a bad man even though the prosecutor stopped the officer before he could tell the jury the nature of the prior contact

Here, defense counsel's failure to move for a mistrial in response to the inadmissible evidence deprived him of effective representation as guaranteed by the Sixth Amendment. The weight of the evidence against Appellant could well have shifted in his favor, absent the prejudicial police witness testimony. Moreover, counsel was deficient in not even requesting a cautionary instruction. Because there was no sound trial strategy in allowing the People's witness to flaunt inadmissible evidence before the jury, apparently unchallenged, defense counsel denied Appellant the effective assistance of counsel. The fact that the evidence came from a police officer weighed heavily against Appellant. Accordingly, Appellant asserts that absent counsel's error, the outcome of his case may have been different. Appellant is entitled to another trial.

15

## RELIEF REQUESTED

WHEREFORE, Defendant-Appellant Howard James McKnight prays this Honorable Court reverse his convictions and remand his cause to the Wayne Circuit Court for a new trial.

JONATHAN B.D. SIMON  (P35596)
Attorney for Defendant-Appellant
P.O. Box 2373
Birmingham, Michigan  48012-2373
(248) 433-1980

Dated: May 12, 2014

APPENDIX

People v Horton, unpublished opinion per curiam of the Michigan Court of Appeals, decided August 5, 1997 (Docket No. 193854)

# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellee,

v

TERRY LEE HORTON,

    Defendant-Appellant.

UNPUBLISHED
August 5, 1997

No. 193854
Montcalm Circuit Court
LC No. 95-000076-FH

---

Before: Michael J. Kelly, P.J., and Wahls, and Gage, JJ.

PER CURIAM.

Following a jury trial, defendant was convicted of breaking and entering a building with the intent to commit larceny ("B&E"), MCL 750.110; MSA 28.305, supplemented by habitual offender fourth offense, MCL 769.12; MSA 28.1084. The trial court sentenced defendant to a term of sixteen to thirty years' imprisonment. Defendant appeals as of right. We reverse.

Defendant argues that he was denied a fair trial because the trial court admitted Edmore Chief of Police Timber Irwin's opinion testimony that: "In my opinion, Terry Horton and Darrel Wilson were the ones that committed the breaking and entering and were inside the Edmore Cleaner's." We agree and reverse on this ground.

It is a well-established rule of Michigan jurisprudence that a witness cannot express an opinion concerning the guilt or innocence of a criminal defendant. *People v Buckey*, 424 Mich 1, 17; 378 NW2d 432 (1985); *People v Parks*, 57 Mich App 738, 750; 226 NW2d 710 (1975). The issue of an individual's guilt or innocence is a question for jury resolution. *People v Suchy*, 143 Mich App 136, 149; 371 NW2d 502 (1985). Moreover, the prestige and experience of the police should not be used to try and establish a defendant's guilt. *People v Boske*, 221 Mich 129, 133-134; 190 NW 656 (1922); *People v Humphreys*, 24 Mich App 411, 419; 180 NW2d 328 (1970). Accordingly, the trial court abused its discretion in admitting Irwin's opinion testimony over defendant's objection.

This Court must next consider whether the trial court's error prejudiced defendant. *People v Mateo*, 453 Mich 203, 215; 551 NW2d 891 (1996). "Where the error asserted is the erroneous admission of evidence, the court engages in a comparative analysis of the likely effect of the error in light

-1-

of the other evidence." *Id.* The statutory test for harmless error is not whether the defendant is actually guilty. *Id.*, pp 214-215.

In *Mateo*, the Court concluded that, because the evidence against the defendant was overwhelming, "[b]y definition, the error was harmless under any standard other than" beyond a reasonable doubt. *Id.*, pp 220-221. Here, in contrast, the evidence against defendant was not overwhelming. No evidence was introduced at trial that conclusively placed defendant inside the cleaners on the night in question. Irwin testified that his investigation failed to turn up any fresh latent finger or hand prints inside the cleaners that could be used to identify the perpetrator or perpetrators of the crime. Although similar shoe prints were found on the cleaners' roof and outside defendant's nearby apartment window, no evidence was introduced to establish that defendant owned a pair of shoes that either did or could have made these shoe prints. As for the testimony of defendant's former cellmate concerning defendant's reputed jailhouse confession, the credibility and motivation of the cellmate's testimony was significantly challenged at trial. Finally, no one could conclusively place defendant in a car seen speeding away from the police three days after the crime. In any case, Michigan recognizes the equivocal nature of evidence of flight. *People v Cutchall*, 200 Mich App 396, 398; 504 NW2d 666 (1993).

In addition, it was likely that the testimony had a powerful effect. In *Boske, supra*, p 134, the Court stated in a similar case:

> This gave room for the jury to understand they might consider in their deliberations the fact that the sheriff knew he had the guilty man or at least give consideration to the sheriff's opinion that he had. It was the duty of the jury to pass upon the facts and decide the question of guilt or innocence uninfluenced by the opinions of others. The import of such argument was an appeal for conviction on the opinion of the sheriff.

Similarly, in *Humphreys, supra*, p 419, this Court stated:

> Because this remark may well have led the jury to suspend its own powers of judgment in reviewing the evidence before it, we hold the remark to be highly prejudicial and improper. That it had this effect seems likely in view of the experience and prestige standing behind the prosecutor's office, the police department, and, ultimately, the person who made it.
>
> * * *
>
> And because of this experience and prestige, we cannot say with any certainty that an instruction would have countered the impact and eliminated the prejudice of this remark. It seems likely that the jury, after being instructed to disregard the remark and weigh only the evidence before it, would say "yes, of course, * * * but the police and prosecution *do* believe Humphreys [the defendant] did it. . . ." In light of the closeness of the ultimate factual question in this case and our inability to say that an instruction

would have eliminated the prejudice inhering in this unfortunate remark, we hold it to be reversible error, and order a new trial.

Comparing the likely effect of the trial court's error here with the untainted evidence, we conclude that defendant was unfairly prejudiced. As was the case in *Boske, supra,* and *Humphreys, supra,* Irwin's opinion testimony was likely to have tempted the jury to disregard its responsibility to decide guilt or innocence. See also *People v Smith,* 158 Mich App 220, 231-232; 405 NW2d 156 (1987).

Because the issue may reappear on remand, we briefly address defendant's argument that the testimony concerning shoe prints on his apartment roof was irrelevant and highly prejudicial. We disagree. This evidence was relevant to the prosecution's theory that defendant walked across his apartment roof twice: first to scout out the possibility of using a tree between the apartment building and the cleaners to break into the cleaners, and second to commit the crime. MRE 401; *People v Mills,* 450 Mich 61, 67; 537 NW2d 909 (1995). In addition, the probative value of this evidence was not substantially outweighed by the danger of prejudicial effect. MRE 403; *Mills, supra,* p 75. Accordingly, the trial court did not abuse its discretion in admitting this testimony.

In light of our disposition, it is unnecessary to address defendant's argument regarding the sufficiency of the evidence.

Reversed and remanded for a new trial. We do not retain jurisdiction.

/s/ Michael J. Kelly
/s/ Myron H. Wahls
/s/ Hilda R. Gage

-3-

STATE OF MICHIGAN
IN THE COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

Docket No. 319979

HOWARD JAMES MCKNIGHT,

Defendant-Appellant.

_____/

Wayne Circuit Court No. 2013-000628-01-FC

_____

## CERTIFICATION OF SERVICE

Pursuant to MCR 2.104(A)(2)(d), Jonathan B.D. Simon certifies that he is the attorney for Howard James McKnight, Defendant-Appellant in the above captioned cause. Further, that on the 12th May, 2014, he personally served a copy of Defendant-Appellant's BRIEF ON APPEAL upon the following:

Clerk of the Court
Wayne Circuit Court
1441 St. Antoine, Room 901
Detroit, Michigan  48226

Hon. Kym L. Worthy
Wayne County Prosecutor
1441 St. Antoine, Room 1200
Detroit, Michigan  48226

_____
JONATHAN B.D. SIMON